UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Kathleen Biesterfeld, individually, and as representative of N.B.; and Ronald Biesterfeld, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:21-CV-03085 |
| v. | ) ) | Judge Edmond E. Chang |
| Ariosa Diagnostics, Inc., | ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Kathleen and Ronald Biesterfeld used a prenatal genetic test to look for the chromosomal abnormality associated with Down Syndrome. After the test returned a negative result, their child was born with the syndrome, so they brought this suit asserting Illinois state law claims against the seller of the genetic test, Defendant Ariosa Diagnostics, Inc.[1] The initial complaint alleged that Ariosa made misrepresentations and asserted claims under the Illinois Consumer Fraud and Deceptive

---

[1]Initially, the Biesterfelds also named as defendants two non-legal entities, Ariosa Diagnostics Clinical Laboratory and Harmony Prenatal Testing, but those entities were later dropped from the suit. R. 1-1, at 1; R. 19.

As to the Plaintiffs, the amended complaint names Kathleen Biesterfeld individually and as representative of N.B. R. 33, Am. Compl. Because Illinois law does not recognize a "wrongful life" cause of action, *see Siemieniec v. Lutheran Gen. Hosp.*, 512 N.E.2d 691, 702 (Ill. 1987), Kathleen Biesterfeld may only be named as a plaintiff individually. The Plaintiffs acknowledge that they "have not named N.B. as an individual plaintiff," and instead seek (among other things) expenses incurred by Kathleen and emotional-distress damages for the parents. R. 44, Pls.' Resp. at 9.

Business Practices Act, common law fraud, breach of warranty, and negligence. R.1-1.[2] Ariosa moved to dismiss for failure to state a claim, and the complaint was dismissed without prejudice.[3] R. 13; R. 32, 03/31/22 Order. The Biesterfelds then filed an amended complaint asserting claims under the Fraud Act, common law fraud, and negligence. Ariosa again moved to dismiss. R. 36, Def.'s Mot. For the reasons discussed below, this time around the dismissal motion is denied as to the Fraud Act and common law fraud claims. The negligence claim is dismissed again.

## I. Background

In evaluating Ariosa's motion to dismiss, the Court accepts as true all of the factual allegations contained in the amended complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). When Kathleen Biesterfeld became pregnant, she and her husband Ronald Biesterfeld sought genetic testing to determine the presence of a Trisomy 21 defect, the genetic abnormality associated with Down Syndrome. Am. Compl. ¶ 9. If the fetus had the Trisomy 21 defect, the Biesterfelds were prepared to terminate the pregnancy. *Id.* ¶¶ 9, 30–31.

The Biesterfelds went to the DuPage Medical Group's clinic for prenatal care, where they asked their doctors about genetic testing. Am. Compl. ¶¶ 8–9. The doctors recommended the Harmony Prenatal Test, a genetic test sold by Ariosa Diagnostics,

---

[2]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

[3]The Court has diversity jurisdiction under 28 U.S.C. § 1332. The Biesterfelds are Illinois citizens, whereas Ariosa is a Delaware corporation with its principal place of business in California. R. 30 ¶ 2; R. 1 ¶ 11.

2

Inc. *Id.* ¶ 10. The doctors explained to the Biesterfelds that they (the doctors) had been told by Ariosa that the test was 100% accurate in detecting Trisomy 21. *Id.* ¶ 11. The doctors also gave the Biesterfelds an Ariosa marketing brochure. *Id.*

The Biesterfelds then went home and did their own research on the Harmony Prenatal Test. Am. Compl. ¶ 12. They went to Ariosa's website, which also advertised that the test had a 100% accuracy rate in detecting Trisomy 21. *Id.* ¶ 12. So, after hearing about the test from the DuPage Medical Group doctors, reading Ariosa's brochure, and seeing the accuracy-rate statement on Ariosa's website, the Biesterfelds concluded that the test was indeed 100% accurate and asked their doctors to order and administer the test. *Id.* ¶¶ 13, 16. Given the representations on the test's accuracy, the Biesterfelds decided not to seek out any other Trisomy 21 testing. *Id.* ¶ 31.

As requested by the Biesterfelds, a DuPage Medical Group doctor ordered and conducted the test, which included performing a blood draw and sending the blood sample to a lab. Am. Compl. ¶ 17. DuPage Medical Group charged the Biesterfelds for the test, but payment was handled directly through the Biesterfelds' insurer. *Id.* ¶ 18.

The test results were negative for Trisomy 21. Am. Compl. ¶¶ 20–21. The DuPage Medical Group received the results and then called Kathleen Biesterfeld and told her that the results were negative. *Id.* ¶ 20. The Biesterfelds believed that, in light of the test results, it was 100% conclusive that their baby did not have the Trisomy 21 defect. *Id.* ¶ 21.

3

But when the Biesterfelds' child, N.B., was born, he had the Trisomy 21 defect and was diagnosed with Down Syndrome. Am. Compl. ¶ 22. N.B. now requires 24-hour care. *Id.* ¶ 23. As a result, the Biesterfelds will incur "extraordinary expenses [for] the care and treatment" of N.B. *Id.* ¶ 89.

The Biesterfelds filed this lawsuit against Ariosa, alleging that Ariosa made misrepresentations about the accuracy of the test. R. 1-1. Ariosa moved to dismiss the Biesterfelds' initial complaint under Civil Rule 12(b)(6), which was granted without prejudice. R. 13; R. 32, 03/31/22 Order. The Biesterfelds then filed an amended complaint, raising Fraud Act, common law fraud, and negligence claims. Ariosa moves to dismiss the amended complaint for failure to state a claim.

## II. Legal Standards

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).[4] These allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations that are entitled to the

---

[4] This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (cleaned up). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

### III. Analysis

### A. Fraud Claims

The Biesterfelds raise two claims alleging fraud: under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, and common law fraud. Both claims must satisfy the heightened pleading requirement of Federal Rule of Civil Procedure Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011); *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 470 (7th Cir. 1999) ("Rule 9(b) requires heightened pleading of fraud claims in all civil cases brought in the federal courts."). Generally speaking, Rule 9(b) requires

that the Biesterfelds' complaint "state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (cleaned up). Put differently, the complaint must describe the "who, what, when, where, and how of the fraud"—although the level of particularity required "will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (cleaned up).

### 1. Fraud Act

Under the Fraud Act, a plaintiff must allege (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) that the deception occurred in the course of conduct involving trade or commerce; (4) actual damage to the plaintiff; and (5) that the actual damage was proximately caused by the deception. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014).

Ariosa first argues that the amended complaint contains no "factual allegations regarding Ariosa's communication of the false statements and misrepresentations," and "no details" about the communications between Ariosa and the DuPage Medical Group doctors. R. 36, Def.'s Br. at 7, 8. This is not so. As in the initial complaint, the key deception alleged in the amended complaint is Ariosa's representation that the Harmony Prenatal Test had a "100% accuracy rate" in detecting Trisomy 21. Am. Compl. ¶¶ 12–13. This statement was allegedly made by Ariosa to DuPage

6

Medical Group doctors, including through training that Ariosa provided. Am. Compl. ¶¶ 11, 14, 26–29. The doctors then orally relayed to the Biesterfelds what the doctors had been told by Ariosa: that the Harmony Prenatal Test was 100% accurate. *Id.* ¶ 11. The doctors also gave the Biesterfelds a marketing brochure from Ariosa. *Id.* The Biesterfelds, after hearing about Ariosa's representations from their doctors and reading the brochure, then went home and researched the test on Ariosa's website, which stated that the test had a 100% accuracy rate.[5] *Id.* ¶ 12; R. 33-1, Exh. A. ("Harmony had a 100% trisomy 21 detection rate compared to 79% with traditional screening.").[6] In other words, not only did the Biesterfelds allegedly hear about the key deceptive statement through their doctors (who in turn had heard it from Ariosa), but the Biesterfelds also read the statement themselves in Ariosa's brochure and on the company's website.[7] Contrary to Ariosa's assertions, even under Civil Rule 9(b)'s heightened pleading requirement, the Biesterfelds have adequately alleged that Ariosa made false statements and representations about the test.

---

[5]Ariosa again attempts to cast the 100%-accuracy-rate statement on its website as entirely accurate and non-deceptive because the website provides a citation to the New England Journal of Medicine. Def.'s Br. at 8–9. For the reasons stated in the prior opinion, this argument is rejected, R. 32, Opinion at 6 (explaining how reasonable consumers would interpret the accuracy statement and the irrelevance of the small-point-font journal citation).

[6]Exhibit A is a screenshot of Ariosa's website that the Biesterfelds took about a year after they first reviewed the website in July 2017. Am. Compl. ¶ 25. As explained in the amended complaint, the screenshot shows that the website "was still up unchanged [in May 2018] such that it still falsely advertised the ARIOSA Test was 100% accurate." *Id.*

[7]Although the amended complaint does not explicitly say that the brochure included the key "100% accurate" statement, it is reasonable to infer that it did. *See* Am. Compl. ¶ 11, 13–14, 31.

7

Ariosa also challenges the sufficiency of the allegations on proximate causation. Ariosa argues that because the amended complaint says that DuPage Medical Group doctors were the ones who ultimately offered and administered the test, the doctors' conduct was thus an "intervening" cause that broke the causal chain between Ariosa's representations and the Biesterfelds' damages. Def.'s Br. at 9–10.

But when viewed in the Biesterfelds' favor, as required at the pleading stage, doctor "intervention" was entirely foreseeable: it was probable that a product like the Harmony Prenatal Test would be ordered and administered by a doctor. Ariosa trained doctors on the test, Am. Compl. ¶ 14, the test requires a blood draw, *id.* ¶ 17, and the Biesterfelds' test was offered, recommended, and ordered by doctors, *id.* ¶¶ 10, 17. At the very least at the pleading stage, the Court holds that the doctors' involvement in the test did not break the causal connection here. *See Martin v. Heinold Commodities, Inc.*, 643 N.E.2d 734, 751 (Ill. 1994) ("In assessing proximate cause where an intervening force is alleged to be present, the only question of concern is whether or not this intervening force is without or within the range of reasonable anticipation and probability." (cleaned up)). Proximate cause is ordinarily a determination "best left to the trier of fact," and the amended complaint alleges more than enough on causation to survive a dismissal motion. *Siegal v. GEICO Casualty Co.*, 523 F. Supp. 3d 1032, 1044 (N.D. Ill. 2021).

Relatedly, Ariosa contends that the Biesterfelds failed to adequately allege the "consumer" element of the Fraud Act because they did not buy the Harmony Prenatal Test *directly* from Ariosa or enter into any contract with Ariosa. Def.'s Br. at 11–12.

8

Ariosa, however, provides no support for the assertion that the Fraud Act requires a direct purchase from or a contractual relationship with the defendant. *Cf. Griffin v. Safeguard Props. Mgmt., LLC*, 2020 WL 6118572, at *4 (N.D. Ill. Oct. 16, 2020) (explaining that the Fraud Act's "definition of consumer does not require that privity exist between the purchaser and the provider of the merchandise" (cleaned up)). To qualify as a consumer under the Fraud Act, all that is required is that the plaintiff purchase the product for consumer use, rather than for resale—which the Biesterfelds have (not surprisingly) alleged. Am. Compl. ¶¶ 9, 16–19, 36; *see* 815 ILCS 505/1(e) (defining "consumer" as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household"). The Court rejects Ariosa's attempt to read into the Fraud Act a direct-purchase or privity requirement.

Finally, Ariosa argues that the Biesterfelds "have not pled that using another genetic test would have led to a different outcome with any certainty." Def.'s Br. at 11. But the Biesterfelds have alleged that other genetic testing—like a "blood test to test the levels of pregnancy-associated plasma protein-A (PAPP-A), or an ultrasound to detect fluid at the back of the fetus' neck, or chorionic villus sampling (CVS), or amniocentesis"—"would have shown the presence of Trisomy 21 in the fetus," and that they "would have terminated the pregnancy." Am. Compl. ¶¶ 9, 30–31, 45–46, 88. Discovery might test these allegations, but at the pleading stage, they are more than enough. In sum, the Biesterfelds have adequately pleaded a claim under the Fraud Act.

9

## 2. Common Law Fraud

To adequately plead a claim for Illinois common law fraud, a plaintiff must allege that (1) the defendant made a false statement of material fact; (2) the defendant knew the statement was false; (3) the defendant made the statement intending to induce the plaintiff to act; (4) the plaintiff relied on the truth of statement; and (5) the plaintiff's damages resulted from that reliance. *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 591 (Ill. 1996).

To the extent that the elements of the Fraud Act overlap with those of common law fraud, the amended complaint sufficiently alleges those elements for the reasons discussed above. Specific to the common law fraud claim, Ariosa argues that the Biesterfelds have failed to allege the fourth element, namely, that the Biesterfelds relied on the truth of the 100%-accuracy statement on its website. No reasonable consumer, Ariosa contends, could rely on that statement and conclude that the test was actually 100% accurate because the website describes the test's detection rate as "[m]ore than 99 in 100"—which is not the same as 100% accuracy. Def.'s Br. at 13–14. This, however, is the same argument that the Court rejected in the prior opinion as too fine-toothed and crabbed to warrant dismissal at the pleading stage. 03/31/22 Order at 6. As explained earlier, the online advertisement quoted by the Biesterfelds outright said that "Harmony had a 100% trisomy 21 detection rate." R. 33-1, Exh. A (screenshot of online ad). Ariosa's motion to dismiss the common law fraud claim is denied.

**B. Negligence**

To adequately plead negligence under Illinois law, a plaintiff must allege (1) the existence of a duty of care owed by the defendant; (2) a breach of that duty; (3) an injury that was proximately caused by that breach; and (4) damages. *Calles v. Scripto-Tokai Corp.*, 864 N.E.2d 249, 263 (Ill. 2007).

As to duty, the Biesterfelds assert that Ariosa owed a "duty to warn prescribing physicians or other health professionals who may prescribe the device of the product's known dangerous propensities." Pls.' Resp. at 12 (quoting *Hansen v. Baxter Healthcare Corp.*, 764 N.E.2d 35, 42 (Ill. 2002)). For support, the Biesterfelds rely on failure-to-warn cases involving a manufacturer's duty to warn about hidden risks or dangers associated with the product. *See Hansen*, 764 N.E.2d at 42–43 (discussing a medical-device manufacturer's duty to warn health professionals about the dangers inherent in its devices); *Salerno v. Innovative Surveillance Tech., Inc.*, 932 N.E.2d 101, 109–11 (Ill. App. 2010) (addressing plaintiff's claim that van manufacturer had failed to provide adequate warnings as to the van's unreasonably dangerous condition).

But the amended complaint contains no mention or allegations about Ariosa's duty to warn, nor do the Biesterfelds assert that the Harmony Prenatal Test had any dangerous condition. *See Salerno*, 932 N.E.2d at 109 ("Under a failure to warn theory, a plaintiff must demonstrate that the manufacturer did not disclose an unreasonably dangerous condition or instruct on the proper use of the product as to which the average consumer would not be aware."). Instead, the key alleged misconduct at issue

is Ariosa's misrepresentations about the accuracy of the test. *See* Am. Compl. ¶¶ 11–14. This conduct does not involve some hidden dangerous propensity of the product. *See Sollami v. Eaton*, 772 N.E.2d 215, 219 (Ill. 2002) ("A manufacturer has a duty to warn where the product possesses dangerous propensities …."). In other words, the Court agrees with Ariosa that "this is not a failure to warn case." Def.'s Reply at 2. Accordingly, the negligence claim is dismissed. For now, the dismissal is without prejudice, but the Court will set a Civil Rule 16(b) deadline to amend pleadings after which good cause would be required for an amendment.

## IV. Conclusion

Because the Biesterfelds have sufficiently alleged the Fraud Act and common law fraud claims, these claims survive Ariosa's motion to dismiss. The negligence claim is dismissed for now. It is high time for discovery to get going, and discovery shall commence on the merits of the named Plaintiffs' claims and the propriety of class certification. Rule 26(a)(1) disclosures are due by April 15, 2024. The first round of written discovery requests must be issued no later May 6, 2024. Fact discovery (including discovery as to treating health care providers) on the merits of the named Plaintiffs' claims and the propriety of class certification shall close on December 20, 2024. Rule 26(a)(2)(C) disclosures of treaters are due 75 days before the close of fact discovery. The Rule 16(b) deadline to add parties or to amend pleadings is October 1, 2024. No early summary judgment motion may be filed before the close of discovery without leave of Court. The Court will set the retained-expert discovery schedule later, when the parties have a better idea of the scope of that form of discovery.

The tracking status hearing of April 5, 2024, is reset to May 24, 2024, at 8:30 a.m., but to track the case only (no appearance is required). Instead, the parties shall file a joint status report confirming that initial disclosures have been made and written discovery request have been issued.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 25, 2024